UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NO. 14-131 |
| JEFFREY WILSON, JAWAN FORTIA, DEDRICK KEELEN, DELWIN MCCLAREN, BRYAN SCOTT | SECTION "N" (5) |

## ORDER & REASONS

Presently before the Court are Motions to Sever, filed by Defendants Delwin McClaren ("McClaren") and Jeffrey Wilson ("Wilson"). (Rec. Doc. 321 and 327). For the ensuing reasons, McClaren's and Wilson's motions are **DENIED**.

## I. BACKGROUND

Six individuals, including Wilson and McClaren, are charged in a thirty-one count Second Superceding Indictment, dated August 28, 2015. (Rec. Doc. 308). Of the thirty-one counts, Wilson is named in four, and McClaren is named in two. Count 1 (or the "RICO Conspiracy") charges four defendants, Wilson, Lionel Allen ("Allen"), Jawan Fortia ("Fortia"), and Dedrick Keelen ("Keelen") (together the "RICO defendants") with membership in Young Melph Mafia ("YMM"), a racketeering enterprise operating in the "Central City" area of New Orleans. Count 1 specifically states that, beginning in or about 2007, the four defendants, as well as others who are unnamed, violated the Racketeer Influenced and Corrupt Organizations Act (RICO) by conspiring to participate in the affairs of YMM through a pattern of racketeering activity consisting of multiple acts involving murder and distribution of crack cocaine and marijuana. Count 1 describes the purposes of YMM as including, in part, the enrichment of "the members and associates of the

1

enterprise through, among other things, the control of and participation in the distribution of controlled substances in the territory controlled by the enterprise," as well as "[p]reserving and protecting the power, territory and profits of the enterprise through the use of intimidation, violence, and threats of violence, including aggravated assault, murder, and attempted murder."

Count 2 charges all of the defendants, except for Allen, with participating in a conspiracy, beginning in or about 2007, to possess and distribute 280 grams of crack cocaine and an unspecified quantity of marijuana. Though Allen is not charged in Count 2 as a member of the drug distribution conspiracy, he is charged in Count 3 and in substantive counts of the indictment, discussed *infra*, with committing crimes in furtherance of the drug distribution conspiracy.

Count 3 charges five of the defendants with conspiring to use and carry firearms during and in relation to, and possessing firearms in furtherance of, the crimes of violence and drug trafficking set forth in the RICO and drug distribution conspiracies of Counts 1 and 2. Wilson is the one defendant not named in the Count 3 gun conspiracy, but he is charged in both of the conspiracies alleged in Counts 1 and 2.

Allen, Fortia, Keelen, and Wilson are charged, either individually or together, in the remaining twenty-eight counts. Counts 4 through 29 present charges stemming from acts of violence related to both the RICO and drug distribution conspiracies. Counts 4 through 7 charge Allen with assaulting multiple individuals with a dangerous weapon, on two occasions, in order to gain entrance to and maintain and increase his position in YMM, the alleged racketeering enterprise, as well as with discharging firearms in furtherance of the crimes charged in Counts 1 and 2.

Count 8 charges Allen and Fortia with murdering Vennie "Funk" Smith to improve their positions in YMM, on or about April 22, 2012. Count 9 charges the two defendants with causing the death of Vennie Smith through the use of firearms, in furtherance of the crimes charged in Counts 1 and 2. The same two charges are brought against Allen in Counts 10 and 11 for the June 3, 2012

2

murder of Dashawn Hartford.

Counts 12 and 13 charge Allen with assaulting an individual identified as "C.P." with a dangerous weapon in aid of YMM, and discharging a firearm in furtherance of the crimes charged in Counts 1 and 2. Both counts stem from acts that occurred on or about June 3, 2012.

Count 14 charges Allen with discharging an assault rifle on or about September 24, 2012, in relation to, and in furtherance of the crimes of violence and drug distribution alleged in Counts 1 and 2.

Counts 15 through 20 all pertain to events that occurred on or about November 26, 2012, and charge Allen with using firearms to assault individuals identified as "J.V., R.T., and T.P," and discharging firearms in furtherance of the crimes charged in Counts 1 and 2.

Counts 21 and 22 charge Keelen with murdering Lawrence Burt and Vivian Snyder on or about December 16, 2012, in order to advance his position in YMM. Count 23 charges Keelen with using a firearm to cause the deaths of Burt and Snyder, in furtherance of the crimes charged in Counts 1 and 2.

Counts 24 and 25 charge Keelen with assaulting an individual identified as "J.B." with a dangerous weapon in aid of YMM, and with discharging a firearm in furtherance of the crimes charged in Counts 1 and 2. Both counts stem from acts alleged to have occurred on or about December 16, 2012.

Counts 26 and 27 charge Allen with murdering Travis "Streets" Thomas on or about May 6, 2013, for the purpose of bettering his position in YMM, and with using a firearm to cause Thomas' death in furtherance of the crimes charged in Counts 1 and 2.

Counts 28 and 29 charge Allen with assaulting an individual identified as "R.R." with a dangerous weapon in aid of YMM, and with discharging a firearm in furtherance of the crimes charged in Counts 1 and 2. Both offenses are alleged to have occurred on or about May 6, 2012.

Counts 30 and 31 charge Wilson with distributing crack cocaine on or about May 13, 2014, and May 30, 2014.

## II. LAW AND ANALYSIS

But for Wilson conceding that initial joinder was proper, he and McClaren have filed essentially mirror motions for severance. In taking up these motions together, the Court will begin by considering whether all of the counts, including the conspiracies, were properly joined in the Second Superseding Indictment. If they were not, then severance is warranted. If they were, then the Court will consider whether joinder has created a risk of prejudice so compelling as to require that one or more of the defendants' trials be severed from the lot.

### A. Initial Joinder of McClaren's Trial

In determining whether to grant a motion for severance, the preliminary inquiry is whether initial joinder was appropriate under Federal Rule 8(b) of Criminal Procedure. Only McClaren contends that it was not. Rule 8(b) allows for multiple defendants to be charged together in a single indictment when they "are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed.R.Crim.P. 8(b). Rule 8 is a flexible rule that should be broadly construed in favor of initial joinder. *United States v. Butler*, 429 F.3d 140, 146 (5th Cir. 2005). Its "same series of acts" requirement necessitates an examination of the allegations contained in the indictment, which are to be viewed as true as long as prosecutorial misconduct has not been alleged. *United States v. Harleson*, 754 F.2d 1153, 1176 (5th Cir.1985). Proper joinder does not require that each defendant be charged in every count of the indictment or that they even be alleged to have "participated in the same act or acts." *United States v. McRae*, 702 F.3d 806, 820 (5th Cir. 2012) (quoting *United States v. Krenning*, 93 F.3d 1257, 1266 (5th Cir. 1996)). The bar is not so high: the key is that the indictment charges "a series of acts unified by some substantial identity of facts or participants." *McRae*, 702 F.3d at 820 (quoting *United States*

4

*v. Dennis*, 645 F.2d 517, 520 (5th Cir.1981)). "The critical question," then, "is whether all of the counts are part of the same series of acts or transactions," *United States v. Lane*, 735 F.2d 799, 804 (5th Cir. 1984). When defendants are not uniformly charged in an indictment, proof of a common scheme connecting the offenses is required to ensure that they are truly part of a series of acts or transactions. *See id.* at 805. "The allegation of an overarching conspiracy from which stems each of the substantive counts" is typically sufficient to establish the needed link between offenses, particularly when the object of the overarching conspiracy involves RICO violations. *See id.*

McClaren generally argues that he should be tried separately from his co-defendants because he was not charged in the Count 1 RICO conspiracy and was not a participant in the substantive offenses charged. However, joinder of offenses committed as part of the pattern of racketeering activity is proper, even where the defendant concerned is not charged in the RICO conspiracy. *See United States v. Krout*, 66. F.3d 1420, 1429 (5th Cir. 1995). In *United States v. Krout*, a total of seven defendants were indicted and tried together. 65F.3d at 1424. Four were charged in a RICO conspiracy that involved the distribution of heroin and cocaine, as well as murder and other violent crimes committed in furtherance of the "Mexican Mafia," a racketeering enterprise. *Id.* at 1425. After the joint trial resulted in convictions, one of the three non-RICO defendants argued misjoinder on appeal, as he had only been named in a separately charged heroin distribution conspiracy and in a substantive count for possessing heroin with intent to distribute. *Id.* at 1429. The Fifth Circuit rejected the non-RICO defendant's misjoinder argument, finding that the offenses were part of a pattern of racketeering activity unified by the charge of an overarching RICO conspiracy. *Id.* Because the RICO conspiracy served as a nexus between the counts, the court concluded that the "same series" requirement of Rule 8(b) had been satisfied. *Id.*; *see also United States v. Posada-Rios*, 158 F.3d 832 (5th Cir. 1998) (Joinder was proper where a RICO conspiracy and a separate distribution conspiracy were "substantially interrelated by their facts and common aim (importation

5

and distribution of large amounts of Columbian cocaine) and by at least one common participant.");
*United States v. Jones*, 303 F.R.D. 279, 285 (E.D.La. 2014) (Joinder of seven non-RICO defendants with five RICO defendants was proper where separately charged conspiracies, substantive violations, and a broad RICO conspiracy were "part of a single plan or scheme: the distribution of controlled substances by any means necessary, including the threat and use of violence").

In the present case, there is little doubt as to the interrelatedness of the counts charged in the Second Superceding Indictment, including the three conspiracies and the remaining substantive offenses. Similar to the separately charged distribution conspiracy in *Krout*, which was considered to be part of a pattern of racketeering activity, the distribution and gun conspiracies here are part of the same scheme of illegal activity as the RICO conspiracy. Not only are multiple defendants common to all three conspiracies, the aims of the RICO and distribution conspiracies are the same – dealing crack cocaine and marijuana in Central City. Moreover, all but one defendant is charged in the gun conspiracy of Count 3, which involves the use of firearms and violence in furtherance of the crimes alleged in Counts 1 and 2. Clearly, these three conspiracies are interrelated.

A close examination of the remaining twenty-eight counts of the Second Superseding Indictment supports this conclusion. One or more of the RICO defendants is charged in each count.[1] Nine counts stem from five homicides that are specifically alleged to have been committed in furtherance of the crimes charged in Counts 1 and 2.[2] There are eight counts of assault with a dangerous weapon in aid of racketeering, each one of which is alleged to have occurred on a date that corresponds to one of nine counts of discharging a firearm in furtherance of the crimes charged

---

[1] Of the four RICO defendants, Fortia, Keelen, and Wilson are charged as co-conspirators of McClaren's in Count 2. Fortia and Keelen are joined by Allen as McClaren's co-conspirators in Count 3.

[2] This total includes Counts 8-11, 21-23, and 26-27.

in Counts 1 and 2.³ The final two counts charge Wilson with distributing crack cocaine – a common aim of the RICO and distribution conspiracies in which Wilson is named as a participant. Thus, not only does this case involve a substantial identity of participants, all of the counts are linked by a common drug trafficking scheme that is sufficient to satisfy the "same series" requirement of Rule 8(b). Therefore, initial joinder of the defendants and charges was proper.

**B. Severance Based on Prejudice**

Having determined that the initial joinder of the defendants, and of the several counts, was proper, the Court must now consider whether there exists a risk of prejudice so significant as to warrant separate trials. In this regard, the defendants raise three reasons for concern: (1) evidence may be used against them at the joint trial that would otherwise be inadmissible; (2) the government intends to introduce evidence of criminal activity, including violence and gang activity, involving only co-defendants; and (3) that of the thirty-one counts in the indictment, McClaren is charged in only two and Wilson in only four.  These factors taken together, argue the defendants, create an undue risk of prejudice.

Pursuant to Rule 14(a) of the Federal Rules of Criminal Procedure, the Court has the authority to order separate trials "[i]f it appears that a defendant . . . is prejudiced by the joinder of offenses or of defendants in an indictment." However, it is preferred that defendants who are indicted together be tried together. *See United States v. Lewis*, 476 F.3d 369, 383 (5th Cir.2007); *see also Zafiro v. United States*, 506 U.S. 534, 537, 113 S.Ct. 933 (1993) (explaining that this preference "promote[s] efficiency and serve[s] the interest of justice by avoiding the scandal and inequity of inconsistent verdicts"). "It is the rule, therefore, not the exception, that 'persons indicted

---

³ Assault with a dangerous weapon in aid of racketeering is charged in Counts 4, 6, 12, 15, 17, 19, 24, and 28. Use and carrying of a firearm during and in relation to a crime of violence is charged in Counts 5, 7, 13, 14, 16, 18, 20, 25, and 29.

7

together should be tried together, especially in conspiracy cases.'" *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012) (quoting *United States v. Pofahl*, 990 F.2d 1456, 1483 (5th Cir.1993)). The district court should order severance "only if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539, 113 S.Ct. 933 (1993) (citation omitted). In other words, the defendants must "convinc[e] the Court that without such drastic relief they will be unable to obtain a fair trial." *United States v. Perez*, 489 F.2d 51, 65 (5th Cir.1973); *see also United States v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006). "Less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice." *Zafiro*, 506 U.S. at 539, 113 S.Ct. 933. As long as it is possible for the jury to "separate the evidence that is relevant to each defendant, even if the task is difficult, and render a fair and impartial verdict as to each defendant, severance should not be granted." *United States v. Ramirez*, 145 F.3d 345, 354-55 (5th Cir.1998) (citing *United States v. Walters*, 87 F.3d 663, 670-71 (5th Cir.1996)).[4]

In this case, Wilson and McClaren have not persuaded the Court that joinder has resulted in a risk of prejudice worthy of separate trials. As discussed above, the Second Superceding Indictment contains thirty-one offenses, all of which are linked by a common drug distribution scheme. Co-conspirators of McClaren and Wilson are charged in every count in which they are not. Moreover, many, if not all, of acts that give rise to the substantive charges were committed in furtherance of the drug distribution conspiracy in which McClaren and Wilson are both named as participants. "While the district court must guard against undue influence, it need not protect conspirators from

---

[4] It is rare for a district court to grant a motion for severance, and a court's decision to deny such a motion is reviewed on appeal for abuse of discretion. *United States v. Perez*, 489 F.2d 51, 65 (5th Cir.1973). In fact, "[e]ven if it is shown that initial joinder was improper," the Fifth Circuit has held that "a defendant must also demonstrate 'clear, specific and compelling prejudice that resulted in an unfair trial' in order to demonstrate reversible error." *United States v. Mays*, 466 F.3d 335, 340 (5th Cir. 2006) (quoting *United States v. Bullock*, 71 F.3d 171, 174 (5th Cir. 1995)).

8

evidence of their confederates' acts in furtherance of their common aims." *United States v. Jones*, 303 F.R.D. 279, 286 (E.D.La. 2014) (quoting *United States v. Manges*, 110 F.3d 1162, 1174-75 (5th Cir. 1997) (quotation marks omitted)). Rule 14 was not intended to shield defendants from this type of prejudice, and the Court is not inclined to exercise its authority in such a fashion. *See Jones*, 303 F.R.D. at 286 (citing *United States v. Thompson*, No. 99-41007, 2001 WL 498430, at *4 (5th Cir. 2001) (unpublished) ("[W]e have previously rejected the argument that evidence of crimes committed by coconspirators, including gruesome murders, suffices to establish prejudice.").

However, even if the Court were prone to sever the trials under Rule 14(a), neither Wilson nor McClaren has made the requisite showing of compelling prejudice. *See United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995) (explaining that "neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance") (citing *United States v. Neal*, 27 F.3d 1035, 1045 (5th Cir.), *cert. denied*, 513 U.S. 1008, 114 S.Ct. 530, 130 L.Ed.2d 433 (1994)); *see also United States v. McRae*, 702 F.3d 806, 821-22 (5th Cir. 2012) (To the extent that limiting instructions do not cure the risk of prejudice entirely, the court must weigh any remaining prejudice against the benefits of judicial economy.). The Second Superseding Indictment is clear as to which defendants are charged in the acts of violence, and neither Wilson nor McClaren are among them. Moreover, to the extent that the risk of prejudice manifests at trial, the Court will make use of limiting jury instructions to quell it. Finally, the benefit of judicial economy in this case substantially outweighs any risk of prejudice created by joinder. In light of the significant overlap in participants and underlying facts, trying these cases together reduces the potential for inconsistent verdicts and promotes efficiency by conserving taxpayer money, avoiding trial delays, and diminishing inconvenience to witnesses and public authorities. As such, severance of the trials of either or both McClaren or Wilson is unwarranted.

### III. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that both Motions to Sever (Rec. Doc. 321 and 327), filed by Defendants Delwin McClaren and Jeffrey Wilson, respectively, are **DENIED**.

New Orleans, Louisiana, this 15th day of October, 2015.

    **KURT D. ENGELHARDT**
    **UNITED STATES DISTRICT JUDGE**